# 2000 DTA 147

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL I - SAN JUAN
PANEL III**

IDANIS GARCIA MORALES, EDGAR RAFAEL RIVERA DE JESUS,
Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS
Demandantes-Recurridos

v.

INSTITUTO COMERCIAL DE PUERTO RICO JUNIOR COLLEGE
Y ANGEL L. CURBELO
Demandados-Peticionarios

Núm. KLCE-99-01312

San Juan, Puerto Rico, a 16 de junio de 2000

Panel integrado por su Presidente, Juez Arbona Lago
y los Jueces Brau Ramírez y Urgell Cuebas

Urgell Cuebas, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Los recurridos en el caso de autos, Sra. Idanis García Morales y su esposo, Sr. Edgar Rafael Rivera de Jesús, presentaron el 10 de junio de 1999 una demanda por despido injustificado y discrimen contra el Sr. Angel L. Curbelo y el Instituto Comercial Puerto Rico Junior College (en adelante, PRJC). En la misma, los recurridos se acogieron al procedimiento sumario dispuesto en la Ley Núm. 2 de 17 de octubre de 1961, 32 L.P.R.A. secs.

3118 *et seq.*

Los demandados presentaron, fuera de los términos provistos por dicha ley, una moción de prórroga sin juramentar y una contestación a la demanda, en la que solicitaron que el procedimiento se viera por la vía ordinaria.

El Tribunal de Primera Instancia, Sala Superior de San Juan, mediante resoluciones emitidas el 20 de septiembre de 1999, se negó a conceder la prórroga solicitada y declaró sin lugar la contestación a la demanda. Los demandados recurren ante nos, señalando que incidió el tribunal *a quo* al denegar la moción de prórroga, no aceptar la contestación a la demanda, y no ordenar que el proceso se viera por la vía ordinaria.

Examinado el expediente ante nos, procedemos a expedir el auto solicitado y revocar las resoluciones recurridas.

# I

La Sra. García Morales comenzó a trabajar en el Recinto de Arecibo del PRJC en enero de 1991, siendo nombrada Directora de Admisiones de dicha institución, el 9 de septiembre de ese mismo año. En diciembre de 1992, ésta informó al Sr. Curbelo, quien ocupaba el puesto de Director-Decano en esa unidad del PRJC, que estaba embarazada. Según la Sra. García Morales, este anuncio dio inicio a una serie de actos discriminatorios en su contra por parte del Sr. Curbelo que le causaron grave malestar y, finalmente, ocasionaron que perdiera el hijo.

La demandante señala que esa situación se repitió durante su segundo embarazo, del cual informó al Sr. Curbelo en noviembre de 1993. Alega que éste comenzó a exigirle más en su trabajo, a pesar de conocer su estado de gravidez. Ella decidió tomar su licencia de maternidad a partir del 22 de junio de 1994. Durante dicha licencia, la demandante se enteró de que había sido reemplazada en el puesto de Directora de Admisiones. Al regresar a su trabajo, luego del alumbramiento, encontró que había sido degradada a la posición de reclutadora.

Finalmente, hacia febrero de 1995, la Sra. García Morales se enteró de que estaba embarazada por tercera vez. Dicha información llegó a oídos del Sr. Curbelo, quien alegadamente comenzó una nueva campaña de presión en su contra, que culminó el 10 de julio de 1995 cuando ésta fue despedida de su trabajo efectivo el 12 de julio siguiente.

El 10 de junio de 1999, la Sra. García Morales y su esposo instaron una demanda contra el Sr. Curbelo y el PRJC. En la misma, como mencionamos previamente, se acogieron al trámite sumario dispuesto en la Ley Núm. 2 del 17 de octubre de 1979, *supra*. Por su relevancia al caso de autos, reproducimos íntegramente las alegaciones formuladas por los demandantes en los párrafos 25 al 31 de su escrito:

*"25. La demandante fue despedida de su trabajo por razón de su sexo, incluyendo su embarazo y otras condiciones médicas relacionadas. Además, su despido fue sin justa causa y en violación a la Ley 3 de marzo 13, 1949, 29 L.P.R.A. sec. 469, y Ley 80 de mayo 30, 1976, sec. 185a.*

*26. Las acciones discriminatorias de los demandados hacia la demandante incluyen, aunque no se limitan a las siguientes:*

*a. Comentarios denigrantes sobre su embarazo.*

*b. Comentarios menospreciando su habilidad para realizar trabajo mientras estaba embarazada.*

*c. Asignaciones de trabajo detrimentales para su estado físico y mental.*

*d. Requerimientos y presiones para realizar trabajos al mismo standard [sic] de eficiencia y calidad de otras empleadas que no estaban embarazadas.*

*e. Interrupción de sus períodos de descanso y almuerzo.*

*f. Proveer a la demandante condiciones de trabajo inseguras.*

*27. Al momento de su despido, la demandante estaba ganando por lo menos $16,800 al año.*

*28. Las acciones discriminatorias contra la demandante fueron maliciosas y tomadas con indiferencia.*

*29. Como resultado de las prácticas discriminatorias de los demandados, la demandante ha sufrido, sufre y sufrirá daños físicos y angustias mentales, al igual que daños monetarios, valorados en una suma que excede un [sic] $1,000,000.*

*30. De igual forma, como resultado de las prácticas discriminatorias de los demandados hacia la demandante, el señor Edgar Rafael Rivera De Jesús, esposo, ha sufrido, sufre y sufrirá daños físicos y angustias mentales, al igual que daños monetarios, valorados en una suma que excede los $300,000.*

*31. La parte demandante se acoge para el trámite de la presente acción al procedimiento especial de carácter sumario que establece la Ley Núm. 2 del 17 de octubre de 1979.*

*Por todo lo cual, se solicita de este Honorable Tribunal que declare ha lugar la presente demanda y condene solidariamente a los demandados Instituto Comercial de Puerto Rico Junior College y Angel L. Curbelo a pagar a la demandante Idanis García Morales una suma en exceso de $1,000,000 como daños compensatorios y una suma adicional como daños punitivos; y al Señor Edgar Rafael Rivera De Jesús una suma en exceso de $300,000 como daños compensatorios, más intereses, costas y honorarios. Ambos demandados fueron emplazados el 23 de junio de 1999. Según dispuesto en la sec. 2 de la Ley Núm. 2, supra, el PRJC contaba con un término de diez (10) días para contestar la demanda, pues había sido emplazado en el mismo distrito judicial donde había sido presentada la demanda (San Juan), mientras que el Sr. Curbelo tenía quince (15) días para contestar, por haber sido emplazado en Arecibo. El 16 de julio de 1999, los demandados presentaron una moción de prórroga, la cual no estaba debidamente juramentada."* ■

El 21 de julio de 1999, los demandantes presentaron un escrito titulado "*Solicitud para que se dicte sentencia*". En éste, solicitaron al Tribunal de Primera Instancia que, considerando que la moción de prórroga de los demandados había sido presentada fuera de término, no estaba juramentada, y no aducía hechos que justificasen dicha solicitud, dictase sentencia contra los demandados. Los demandantes basaron su reclamo para que se dictase sentencia en las partidas salariales y no incluyeron las cuantías relacionadas a los daños. La cifra reclamada ascendiente a $134,200; fue computada por los demandantes a base de 48 meses de salarios no devengados (de julio de 1995 a julio de 1999), con un salario de $1,400 mensuales, además de la duplicación de dicha suma, a tenor con lo dispuesto en la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R. A. sec 146. ■

El 28 de julio de 1999, los demandados presentaron un escrito titulado "*Moción en Oposición a Solicitud para que se Dicte Sentencia y Solicitando que se Tramite el Caso por la Vía Ordinaria*". Apéndice del Recurso, a las págs. 15-29. Alegaron que el caso no era susceptible de ser tramitado por la vía sumaria, por reclamarse en la demanda sumas que no son de fácil cómputo. Solicitaron, además, que el caso se atendiera dentro de un procedimiento ordinario, según dispuesto en las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Nueve días después, el 4 de agosto de 1999, los demandados presentaron su contestación a la demanda y una reconvención. En ésta, negaron las alegaciones esenciales contenidas en la demanda, invocaron una serie de defensas afirmativas e incoaron una reconvención por hechos ocurridos durante el trámite de dos demandas

presentadas por el matrimonio Rivera García, por los mismos hechos, ante el Tribunal de Distrito Federal para el Distrito de Puerto Rico.

El 10 de agosto de 1999, los demandantes presentaron una réplica a la *"Moción en Oposición a Solicitud para que se Dicte Sentencia"* del Sr. Curbelo y el PRJC, con lo que la controversia quedó sometida para la consideración del Tribunal de Primera Instancia.

El 3 de noviembre de 1999, dicho foro emitió tres Ordenes relativas al caso de autos. Apéndice del recurso, a las págs. 48-50. En la primera de ellas, el tribunal declaró sin lugar la Moción de Prórroga para Contestar presentada por los demandados el 16 de julio de 1999, mientras que en la segunda orden, el tribunal *a quo* dispuso de la Contestación a la Demanda señalando *"Véase otra de hoy"*. Finalmente, el tribunal dispuso de la réplica de los demandantes a la *"Moción en Oposición a Solicitud para que se Dicte Sentencia"*, señalando, precisamente, *"Ya se dispuso"*.

Los demandados recurren ante nos de estas órdenes, alegando que incidió el Tribunal de Primera Instancia al no concluir que este caso no es apto para ser examinado mediante la vía sumaria, y al no ordenar que el mismo se tramite mediante el procedimiento ordinario.

El 24 de noviembre de 1999, los demandantes comparecieron ante este Foro mediante una Moción de Desestimación y Oposición a la Petición de *Certiorari*. Alegaron que los demandantes, al presentar su recurso de *certiorari*, habían violado la Regla 33 (A) del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R. A. Ap. XXII-A, R. 33, al no notificar la solicitud de *certiorari* debidamente sellada con la fecha y hora de presentación.

El 11 de enero de 2000, emitimos una Resolución donde concedimos a los peticionarios el término de cinco (5) días laborables para que mostraran causa por la cual no debíamos desestimar el recurso por las razones señaladas por los recurridos en su escrito. Los peticionarios comparecieron oportunamente y, mediante Resolución de 22 de febrero de 2000, declaramos sin lugar la solicitud de desestimación de los recurridos. Resolvemos.

## II

La característica medular de un procedimiento civil sumario, es lograr, lo más rápido posible, la reivindicación de determinados derechos, sin negar al querellado la oportunidad de presentar efectivamente sus defensas. Por ser el procedimiento sumario la excepción, su aplicación está limitada a situaciones expresas en que exista la necesidad de reparar en breve plazo algún agravio. *Turabo Ltd. Partnership v. Velardo Ortiz*, 130 D.P.R. 226, 234 (1992).

La interpretación y aplicación de una ley a circunstancias que no fueron explícitamente consideradas por el legislador, no puede hacerse en forma mecánica, sino que se ha de velar para que se logren los objetivos que motivaron la aprobación del estatuto y atemperar su aplicación a las nuevas circunstancias, de forma tal que el estatuto no sea susceptible de ataque constitucional.

La Ley Núm. 2, *supra*, fue aprobada en el año 1961 para actualizar la Ley Núm. 10 de 14 de noviembre de 1917. Nos indica *Rivera v. Insular Wire Products Corp.*, 140 D.P.R. ___(1996), **96 J.T.S. 76,** pág. 1170, que al igual que la ley anterior, su propósito era *"establecer un procedimiento sumario para los casos de reclamaciones de obreros y empleados contra sus patronos por servicios prestados."* Al considerar los propósitos y limitaciones de este procedimiento sumario, a la pág. 1172, el Tribunal Supremo expuso que:

*"... [E]l procedimiento judicial sumario establecido por la Ley Núm. 2 tiene como fin primordial el proveerle al obrero un mecanismo procesal acortado que facilite y aligere el trámite de sus reclamaciones laborales. Aunque este procedimiento limita el uso de las reglas procesales y sitúa al patrono en una posición*

*procesalmente un poco más onerosa que la del obrero, el procedimiento sumario no es, ni puede ser, una carta en blanco para la concesión de remedios a obreros que no han justificado adecuadamente, mediante alegaciones o prueba, hechos que avalen su derecho a lo reclamado." Díaz v. Hotel Miramar Corp.,* [103 D.P. R. 314, 324 (1975)]. ■

En el trámite de los casos en los tribunales, ya fuere que éstos se ventilan por la vía ordinaria o por algún procedimiento especial como el sumario establecido por la Ley Núm. 2, hay que tener presente que el propósito cardinal de las normas procesales, bajo cualesquiera circunstancias, es lograr resolver las controversias que se presentan ante el sistema judicial de forma justa, rápida y económica. Los tribunales de instancia tienen amplia flexibilidad y discreción para, dentro del marco que proveen las Reglas de Procedimiento Civil y los procedimientos especiales, lograr esta meta al resolver los casos ante su consideración.

Nuestras Reglas de Procedimiento Civil permiten a las partes incluir en una querella, una o más causas de acción que surjan de la misma o distintas leyes o hechos. Por otro lado, el procedimiento sumario bajo la Ley Núm. 2, *supra*, sólo permite una contestación a la querella y dispone que cualquier defensa afirmativa omitida queda irremediablemente renunciada. ■

Ante este posible conflicto, el Tribunal Supremo resolvió en *Rivera v. Insular Wire Products Corp., supra*, págs. 1172 y 1173, que:

*"[E]l que un obrero o empleado lo considere conveniente y que exista la opción de utilizar el procedimiento sumario para tramitar sus reclamaciones, no impide que el tribunal, utilizando su discreción y haciendo un justo balance entre los intereses del patrono y los del obrero querellante, a la luz de las circunstancias específicas de las reclamaciones en la querella, determine que es más prudente que [ciertas] reclamaciones ... se ventilen por la vía ordinaria.*

*... [L]os tribunales, al confrontarse con querellas o demandas con causas de acción y partes múltiples, tienen amplia discreción sobre el manejo del caso con el propósito de lograr la resolución de éste de la forma más justa, rápida, y económica posible. Pueden separar causas de acción o controversias, consolidar trámites, determinar, a la luz de la circunstancias de cada caso, si se trata de controversias sencillas que cualifican para verse por un trámite sumario especial o si se trata de casos complicados o complejos que deben proceder por la vía ordinaria y hasta ser objeto de un manejo especial. Regla 38.2 de Procedimiento Civil; Vellón v. Squibb Mfg., Inc., 117 D.P.R. 838 (1986); Zorniak Air Services, Inc. v. Cessna Aircraft Co., etc., Op. de 10 de diciembre de 1992, 133 D.P.R. \_\_\_(1992), 92 J.T.S. 167."*

De lo anterior se desprende que para que el procedimiento sumario sea aplicable a una querella con múltiples causas de acción, no basta que el querellante solicite que la misma se vea bajo el procedimiento sumario provisto en la Ley Núm. 2, *supra*. En tales casos, el tribunal tiene que concluir, para cada una de las causas de acción incluidas en la demanda, que no se afectará adversamente el derecho del querellado al debido proceso de ley si se aplican las restricciones que el procedimiento sumario impone. Si con respecto a una o varias de éstas, se afectase el derecho del querellado a un trato justo, el tribunal puede separar las causas de acción restantes para que estas últimas se adjudiquen bajo el procedimiento sumario. Alternativamente, en pos de la economía procesal, el tribunal de primera instancia puede convertir el procedimiento en uno ordinario y utilizar las opciones que provee el procedimiento ordinario para aligerar el trámite del caso.

## III

Un análisis de la demanda instada por el matrimonio Rivera García contra el PRJC y el Sr. Curbelo, revela que en la misma se incluyen una serie de alegaciones que requieren, para su contestación adecuada y responsable, la obtención de información que el patrono no está obligado a compilar y conservar, según los estatutos laborales vigentes.

Aunque los demandantes del caso de autos invocaron en su demanda diversas leyes (entre ellas, la Ley 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. secs. 146 *et seq.*; la Ley Núm. 3 de 13 de mayo de 1942, según enmendada, 29 L.P.R.A. secs. 467 *et seq.*; la Ley Núm. 80 de 30 de mayo de 1976, 29 L.P.R.A. sec. 185a; y, al incluir reclamos por daños físicos y angustias mentales, el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141), solicitaron únicamente compensación por los daños y angustias mentales sufridos por ambos. No es hasta más de un mes después de instada la demanda que los demandantes presentan, en su *"Solicitud para que se dicte sentencia sumaria"*, un reclamo definido al amparo de la Ley Núm. 100, *supra*, la cual prohíbe el discrimen en el empleo.

El Tribunal Supremo, en *Rivera v. Insular Wire Products Corp., supra*, a la pág. 1172, indicó lo siguiente:

*"... [E]n aquellos casos en que un tribunal determina que se trata de reclamaciones complicadas o que existen circunstancias especiales que ameritan que el patrono querellado realice una más detenida y minuciosa investigación para contestar y presentar defensas adecuadas, se justifica la concesión de una prórroga."*

En su demanda contra PRJC, el matrimonio Rivera García hizo un reclamo de compensación por daños y perjuicios, el cual requiere para su contestación, información que no está disponible en los récords del patrono. Al promover esta causa de acción, ▮ los demandantes no pueden, como pretenden, reclamar que la totalidad del caso se vea bajo el procedimiento sumario de la Ley Núm. 2, *supra*. Dado que la causa de acción incluida en la demanda no puede acomodarse al procedimiento sumario sin vulnerar el derecho del patrono a un trato justo, la demanda, según formulada, no se puede dilucidar bajo las restricciones procesales incluidas en la Ley Núm. 2, *supra*, incluyendo las restricciones impuestas a la etapa de las alegaciones.

Las alegaciones de daños físicos y angustias mentales hechas por los demandantes requieren una amplia investigación, pues la información sobre éstas no es necesariamente de conocimiento de los demandados. Esto es muy distinto a la situación en que la reclamación se circunscribe a salarios o beneficios dejados de satisfacer por el patrono, sobre los cuales éste viene obligado por ley a mantener los récords necesarios. A la luz de lo anterior, entendemos que el procedimiento sumario de la Ley Núm. 2, *supra*, no es el apropiado para dilucidar la demanda instada contra el PRJC y Sr. Curbelo. Sobre todo, cuando dicho procedimiento sumario dispone que *"[e]l querellado deberá hacer una sola alegación responsiva en la cual deberá incluir todas sus defensas y objeciones, entendiéndose que renuncia a todas las defensas u objeciones que no incluya en dicha alegación responsiva."* 32 L.P.R.A. sec. 3120.

Concluimos que el tribunal recurrido abusó de su discreción al negarse a aceptar la contestación presentada por el PRJC, ni permitir que se ventilasen las reclamaciones bajo el procedimiento ordinario. Las reclamaciones incluidas en la misma son de tal naturaleza que nunca debieron ser consideradas al amparo de dicha ley.

Finalmente, debemos aclarar que somos conscientes de lo señalado por el Tribunal Supremo en *Dávila, Rivera v. Antilles Shipping, Inc.*, **99 J.T.S. 10**, a la pág. 540, donde se limitó nuestra facultad revisora *"en aquellos casos de resoluciones interlocutorias dictadas al amparo de la Ley Núm. 2 con excepción de aquellos supuestos en que la misma se haya dictado sin jurisdicción por el tribunal de instancia y en aquellos casos extremos en los cuales los fines de la justicia requieran la intervención del foro apelativo; esto es, en aquellos casos extremos en que la revisión inmediata, en esa etapa, disponga del caso, o su pronta disposición, en forma definitiva, o cuando dicha revisión inmediata tenga el efecto de evitar una "grave injusticia" ("miscarriage of justice").* El permitir, en el caso de autos, que el Tribunal de Primera Instancia continúe con los procedimientos de forma sumaria, sin escuchar a los demandados, constituiría una clara injusticia contra éstos. Los aquí demandantes pretenden ampararse en una disposición procesal que no está diseñada para cobijar reclamos como el suyo. Procede que el caso se ventile dentro de un procedimiento ordinario.

## IV

Por los fundamentos antes expuestos, se expide el auto solicitado y se revocan las resoluciones emitidas el

20 de septiembre de 1999 por el Tribunal de Primera Instancia, Sala Superior de San Juan. Se devuelve el caso a dicho foro para que continúe con los procedimientos de forma cónsona con lo aquí resuelto.

Así lo ordena y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau<br>
Secretaria General