EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Angeline C. Martínez Kim<br><br>        Peticionaria<br><br>                v.<br><br>PETCO, Inc., Levid Coss, la Sociedad Legal Compuesta por este y Fulana de Tal, y Aseguradora XYZ<br><br>        Recurridos | Certiorari<br><br>2017 TSPR 201<br><br>198 ____ |

Número del Caso: CC-2016-512

Fecha: 21 de diciembre de 2017

Región Judicial de San Juan

Abogados de la parte peticionaria:
    Lcdo. Rafael Ortiz Mendoza
    Lcdo. Jorge Farinacci Fernós

Abogados de la parte recurrida:
    Lcdo. Carl Schuster Brac
    Lcda. Miriam Toledo David
    Lcda. Elizabeth Pérez Lleras

Materia: Sentencia del Tribunal con Opinión Disidente.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Angeline C. Martínez Kim

    Peticionaria

        v.                  CC-2016-0512       Certiorari

PETCO, Inc. Levid Coss, la Sociedad Legal de Gananciales compuesta por este y Fulana de Tal, y Aseguradora X Y Z

    Recurridos

SENTENCIA

San Juan, Puerto Rico, a 21 de diciembre de 2017.

Por estar igualmente dividido este Tribunal y habiéndose expedido el recurso, se confirma el dictamen emitido por el Tribunal de Apelaciones. Véase, Regla 4(a) del Reglamento del Tribunal Supremo, 4 LPRA Ap. XXI-B, R. 4(a).

Notifíquese **inmediatamente** por teléfono, correo electrónico y por la vía ordinaria.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió una opinión disidente a la cual se unió la Jueza Asociada señora Pabón Charneco. El Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Colón Pérez disienten sin opinión escrita. La Juez Asociada señora Rodríguez Rodríguez no intervino.

                      Juan Ernesto Dávila Rivera
                    Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Angeline C. Martínez Kim

    Peticionaria

       v.                           CC-2016-0512
    Certiorari

PETCO, Inc., Levid Coss
la Sociedad Legal de
Gananciales compuesta por
este y fulana de tal, y
Aseguradora XYZ

    Recurridos

Opinión disidente emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ a la cual se une la Jueza Asociada SEÑORA PABÓN CHARNECO

San Juan, Puerto Rico, a 21 de diciembre de 2017.

Disiento porque opino que al revocar al Tribunal de Primera Instancia en el caso de autos, hubiéramos alcanzado la meta de evitar dilaciones procesales y otorgar un remedio adecuado, completo y oportuno a la peticionaria. En ese sentido, le correspondía a este Tribunal dilucidar si el Tribunal de Apelaciones erró al no expedir el recurso de *certiorari* de epígrafe. En él, se buscaba revisar una resolución interlocutoria del Tribunal de Primera Instancia en un procedimiento bajo la Ley Núm. 2, infra, mediante la cual se declaró no ha lugar una petición para que se dictara sentencia sumaria

parcial en rebeldía y, por consiguiente, se señalara una vista para dilucidar los daños sufridos. Particularmente, el foro primario determinó que las alegaciones esbozadas en la querella instada al amparo de la Ley Núm. 2, infra, eran insuficientes para poder resolver las causas de acción, por lo que correspondía celebrar una vista en rebeldía en sus méritos.

Dado el hecho que se confirma el dictamen emitido por el Tribunal de Apelaciones, provocado por este Tribunal encontrarse igualmente dividido, disiento. En su lugar, hubiera revocado la Resolución emitida por el Tribunal de Primera Instancia, en cuanto a la denegatoria de dictar sentencia parcial en rebeldía. De las alegaciones contenidas en la querella surge claramente que hubo hostigamiento sexual. Por tanto, opino que esas alegaciones eran suficientes para dilucidar las causas de acción y no era necesario realizar cuantas vistas sean necesarias para que demostrara que era víctima de hostigamiento sexual. En consecuencia, hubiera ordenado que se dictara la referida sentencia, a base de las alegaciones contenidas en la querella, y procediera posteriormente a celebrar cuantas vistas sean necesarias para cuantificar los daños sufridos. Ante el hecho que ese no es el curso de acción llevado a cabo por este Tribunal, me veo en la obligación de disentir.

Repasemos sucintamente los hechos y trámites procesales que originaron la controversia ante este Tribunal.

## I

El caso de epígrafe comenzó el 20 de diciembre de 2013, cuando la Sra. Angeline C. Martínez Kim (señora Martínez o peticionaria) presentó una querella en contra de su antiguo patrono, Petco, Inc. (Petco o patrono),[1] su antiguo supervisor, el Sr. Levid Coss (señor Coss o supervisor), junto con la sociedad legal de bienes gananciales compuesta por éste y su esposa, y la Aseguradora X, Y, Z (en conjunto, los recurridos).[2] Esta querella fue instada bajo la Ley Núm. 2 del 17 de octubre de 1961, 32 LPRA sec. 3118 *et seq.* (Ley Núm. 2).[3] La peticionaria alegó que fue víctima de hostigamiento sexual por parte del señor Coss en múltiples ocasiones.[4] Entre las alegaciones incluidas en

---

[1]En su primera comparecencia, el patrono se identificó como Petco Puerto Rico, L.L.C. (Petco o patrono).

[2]En la primera moción presentada por el patrono y el Sr. Levid Coss (señor Coss) (en conjunto, los recurridos), se hizo constar que al momento de ser emplazado, el señor Coss no estaba casado.

[3]La Sra. Angeline C. Martínez Kim (señora Martínez o peticionaria) fundamentó su querella en la Ley Núm. 17 del 22 de abril de 1988, 29 LPRA sec. 155 *et seq.*, la Ley Núm. 69 del 6 de julio de 1985, 29 LPRA sec. 1321 *et seq.*, la Ley Núm. 100 del 30 de junio de 1959, 29 LPRA sec. 146 *et seq.* y los artículos 1802 y 1803 del Código Civil, 31 LPRA secs. 5141 y 5142.

[4]Nótese que la peticionaria estuvo en periodo probatorio durante el tiempo que laboró para Petco.

la querella referentes al alegado hostigamiento sexual,

estaban las siguientes:

> 9. Entre noviembre y diciembre de 2012, el supervisor Coss lanzó varios piropos a la querellante, en particular, haciendo halagos a sus ojos y mirada.
> . . . .
> 11. Durante ese periodo, el co-querellado Sr. Coss indagó sobre la vida personal de la querellante y el co-querellado Sr. Coss le voluntarizaba [*sic*] información sobre su propia vida personal.
> 12. Durante ese periodo, el co-querellado Sr. Coss ofreció información específica sobre la relación con su esposa, haciendo referencias a como su esposa no lo entendía a él.
> 13. Ante ello, la querellante hizo referencia a lo impropio que era hablar y dar consejos sobre esos asuntos, a lo que este expresó si también estaba prohibido pedir favores sexuales.
> . . . .
> . . . .
> . . . .
> 17. En o alrededor del 21 de diciembre de 2012 y debido a que la querellante no posee un vehículo de motor, el co-querellado Sr. Coss ofreció pon a la querellante.
> 18. En el transcurso del viaje hacia la estación de tren, el co-querellado Sr. Coss sugiere que se detengan un momento para comer algo, a lo que la querellante asintió.
> 19. Durante el viaje, el co-querellado Sr. Coss la miró insidiosamente y le comentó "hoy el mundo se va acabar, ¿por qué no hacemos algo que mañana no nos vamos a arrepentir?". La querellante se pasmó y reaccionó incómoda.
> 20. Llegados al lugar de comida y antes de salirse del vehículo, Coss se colocó una gorra en la falda y le expresó que la querellante "tenía que darle un break" puesto que tuvo "otro tipo de reacción y que si quisiera ver". La querellante se espantó, dejando saber su negativa y sintiéndose extremadamente incómoda.
> . . . .
> 22. Entre el 21 de diciembre de 2012 y el 5 de enero de 2013, mientras ambos laboraban en la tienda, el co-querellado Sr. Coss le expresó a la querellante que ya su esposa no le da "cariñito", que el exesposo de la querellante tampoco le daba "cariñito", y le preguntó

porque ellos no se daban "cariñito" mutuamente.

. . . .

24. Durante ese periodo, el co-querellado Sr. Coss hacía comentarios sobre el aroma de la querellante, se le acercaba y la olía y le comentaba que "tú hueles rico". Querella, Apéndice del *certiorari*, págs. 3-5.

La peticionaria indicó que, al no acceder a los acercamientos sexuales de su supervisor, éste comenzó una campaña de hostigamiento laboral y de represalias en su contra. En la querella se plasmaron las siguientes alegaciones en cuanto a las represalias:

26. Esta campaña consistió, entre otros, en gritarle a la querellante y abusar laboralmente de esta frente los demás empleados, abusando de su rol como supervisor de esta.

27. A modo de ejemplo, el 23 de diciembre de 2012, la querellante fue mordida por un animal y comenzó a sangrar. Contrario a lo establecido por el propio protocolo de la empresa, el co-querellado Sr. Coss obligó a la querellante a seguir atendiendo clientes, en vez de permitirle atender su herida, como dispone la política de la compañía.

28. El 5 de enero de 2013, estando la querellante trabajando en la tienda, el co-querellado Sr. Coss le recortó horas en el momento únicamente a la querellante.

29. Para los días 24, 28 y 30 [de] enero de 2013, el co-querellado Sr. Coss le redujo horas a la querellante y le eliminó días de su horario (21 de enero y 1 de febrero). Íd., págs. 5-6.

Al acercarse el fin del periodo probatorio, la peticionaria fue citada a una reunión en la cual la despidieron por no cumplir con los requisitos necesarios. Sin embargo, nunca le explicaron cuáles eran esos requisitos ni por qué incumplió con ellos. Así las cosas, la peticionaria planteó que su despido fue el

resultado del hostigamiento sexual del cual fue víctima, que a su vez se constituyó en sus dos modalidades, ambiente hostil y *quid pro quo*. Así pues, en la querella la señora Martínez solicitó que se le reinstalara en su antiguo empleo y se le pagaran los salarios que dejó de devengar. Asimismo, incluyó una reclamación por daños y perjuicios por las angustias mentales que sufrió.

Luego de que fueran emplazados los recurridos, éstos solicitaron oportunamente una prórroga para contestar la querella. La peticionaria se opuso a esta solicitud, alegando que no existía la justa causa necesaria para que se concediera y, al haber transcurrido el término con que contaban para presentar sus contestaciones, solicitó que se les anotara la rebeldía. El 30 de enero de 2014, tanto el patrono como el señor Coss presentaron, de manera separada, sus contestaciones a la querella. El patrono también presentó una moción para que el proceso se tramitara bajo el procedimiento ordinario. Así las cosas, el 31 de julio de 2014, el Tribunal de Primera Instancia declaró no ha lugar la solicitud de la señora Martínez para que se anotara la rebeldía y, por el contrario, concedió la prórroga solicitada. En consecuencia, ordenó que se uniesen al expediente las contestaciones presentadas por los recurridos. Asimismo, declaró no ha lugar la solicitud de Petco para que el proceso se convirtiera en uno ordinario.

Inconforme, la peticionaria acudió ante el Tribunal de Apelaciones. Contando con el beneficio de la comparecencia de todas las partes, el foro apelativo intermedio expidió el auto solicitado y revocó la determinación recurrida, pues encontró que no se habían alegado razones que justificaran la concesión de la prórroga. En ausencia de causa justificada, concluyó que el Tribunal de Primera Instancia carecía de autoridad para extender el término con que contaban los recurridos para contestar la querella. En consecuencia, anotó la rebeldía a éstos.[5] Después de que se notificó la Sentencia del Tribunal de Apelaciones, pero antes de que ésta adviniera final y firme, la peticionaria le cursó al patrono un requerimiento de admisiones junto con una solicitud de producción de documentos.

Culminados los trámites apelativos, la señora Martínez presentó ante el foro de instancia un escrito intitulado *Moción de sentencia sumaria parcial en rebeldía y solicitud de vista de daños*. Particularmente, solicitó lo siguiente: (1) que se le anotara la rebeldía a los recurridos; (2) se dictara sentencia sumaria parcial en rebeldía ordenando su reinstalación en el

---

[5]Véase Martínez Kim v. Petco, Inc., KLCE201401173. Los recurridos solicitaron, de manera separada, reconsideración ante el Tribunal de Apelaciones, pero fueron declaradas no ha lugar. Luego, acudieron ante este Tribunal. Véanse Martínez Kim v. Petco, Inc., CC-2015-0117, y Martínez Kim v. Petco, Puerto Rico L.L.C., CC-2015-0118. Se proveyó no ha lugar tanto a los recursos presentados como a las reconsideraciones presentadas posteriormente.

empleo; (3) se les condenara a los recurridos a pagar los salarios dejados de devengar desde que fue despedida hasta el momento en que recayera la sentencia parcial, junto con las penalidades aplicables y los honorarios de abogado correspondientes, y (4) que se señalaran las vistas que fueran necesarias para determinar la cuantía de los daños sufridos por angustias mentales. Del mismo modo, la peticionaria indicó que al no contestarse ni objetarse el requerimiento de admisiones cursado al patrono, procedía que se dieran por admitidos los hechos allí contenidos. Asimismo, planteó que se debía tener por admitido el contenido de varios anejos que se incluyeron al requerimiento. En consecuencia, la señora Martínez señaló que cincuenta y seis (56) hechos materiales y pertinentes estaban incontrovertidos. Ante ello, alegó que procedía que el Tribunal de Primera Instancia emitiera una sentencia sumaria parcial en rebeldía, en la cual se concluyera que las actuaciones de los recurridos constituyeron hostigamiento sexual y discrimen por razón de sexo.

Posteriormente, Petco solicitó un término adicional para contestar el requerimiento de admisiones. Para fundamentar esta solicitud, alegó que las partes habían acordado paralizar el descubrimiento de prueba hasta tanto se terminaran los procesos ante los foros apelativos. Igualmente, arguyó que tal decisión fue avalada por el Tribunal de Primera Instancia. La señora

Martínez se opuso a esta solicitud, e indicó que si bien se habían comunicado las partes para acordar la paralización del descubrimiento de prueba, finalmente habían decidido no paralizar los requerimientos ya cursados. Por tanto, requirió que se declarara no ha lugar la prórroga solicitada, que se dieran por admitidos los hechos comprendidos en su requerimiento, y que se ordenara al patrono a producir los documentos solicitados. Petco replicó, indicando que de las actuaciones de la peticionaria se desprendía que había un acuerdo de paralizar el descubrimiento de prueba y que había esperado, de buena fe, hasta que concluyeran los procesos apelativos para continuar. Reiteró que en una vista ante el Tribunal de Primera Instancia, las partes habían acordado tal paralización.[6]

Así las cosas, el patrono presentó su oposición a la solicitud de la peticionaria para que se dictara sentencia sumaria parcial en rebeldía.[7] Argumentó que no procedía la aplicación de la Regla 36 de Procedimiento Civil por habérsele anotado la rebeldía. Véase Reglas de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36. Por el contrario, planteó que sólo aplicaba la Regla 45 de Procedimiento Civil. Íd., R. 45. Asimismo, indicó que al

---

[6]Petco cursó a la señora Martínez su contestación al requerimiento de admisiones el 26 de octubre de 2015.

[7]El señor Coss adoptó por referencia los argumentos esgrimidos por el patrono en su oposición, y solicitó que se declarara no ha lugar la solicitud de la peticionaria.

ser insuficientes las alegaciones contenidas en la querella, procedía la celebración de cuantas vistas fueran necesarias para que el tribunal pudiera dilucidar si en realidad hubo hostigamiento sexual y discrimen por razón de sexo.

El 9 de febrero de 2016, el Tribunal de Primera Instancia emitió una Resolución mediante la cual anotó la rebeldía a los recurridos. Ahora bien, en cuanto a la solicitud para que se dictara sentencia sumaria parcial en rebeldía, el foro de instancia señaló, primeramente, que no era de aplicación la Regla 36 de Procedimiento Civil, sino que aplicaba la Regla 45.2(b). Íd., R. 36 y 45.2(b). Además, declaró esta solicitud no ha lugar, pues entendió que las alegaciones incluidas en la querella eran insuficientes "para poder adjudicar las causas de acción de discrimen por sexo o de hostigamiento sexual en el empleo, sin la celebración de una vista en rebeldía en sus méritos". Resolución, Apéndice del *certiorari*, pág. 512. De esta forma, el Tribunal de Primera Instancia sostuvo un señalamiento de vista emitido previamente, pero indicó que se trataría de una vista evidenciaria para poder dilucidar si el despido de la peticionaria "fue por causa de un discrimen por sexo o por su modalidad de hostigamiento sexual". Íd., pág. 510. De encontrar que el despido se debió a una de estas causas, el foro primario intimó que correspondería celebrar otra "vista para cuantificar los

daños que se alegan en la querella". Íd. Por último, el tribunal concluyó que el no contestar el requerimiento de admisiones dentro del término concedido para ello "tuvo el efecto de que la parte querellada aceptara todos los hechos correctamente alegados". Íd., pág. 512. Sin embargo, señaló que para poder adjudicar los hechos admitidos, era necesario dilucidar primeramente cuáles eran los motivos del despido.

De ese dictamen, la peticionaria recurrió ante el Tribunal de Apelaciones. Alegó que procedía la revisión del asunto, aunque fuera uno interlocutorio, pues se había dictado sin jurisdicción. Además, arguyó que la revisión conllevaría la disposición definitiva y pronta del caso, y evitaría el que se cometiera una grave injusticia. Después de que el patrono presentara su correspondiente escrito en oposición a la expedición del auto solicitado, el Tribunal de Apelaciones emitió una Resolución mediante la cual denegó expedirlo.[8] El foro apelativo intermedio encontró que el Tribunal de Primera Instancia había sido razonable al anotar la rebeldía, si bien no dictó sentencia en rebeldía. Asimismo, indicó que no procedía la aplicación de la Regla 36 de Procedimiento Civil, supra, pues al haberse anotado la rebeldía, los recurridos estaban impedidos de presentar

---

[8]Véase Martínez Kim v. Petco, Inc., KLCE201600237. La Jueza Fraticelli Torres emitió un voto disidente, pues encontró que se tenían que dar por buenas las alegaciones y que sólo procedía celebrar una vista para dilucidar los daños sufridos por la peticionaria.

prueba. Razonó que cuando una parte solicita que se dicte sentencia sumaria, la regla exige que la parte contraria presente evidencia y que, por lo tanto, era inaplicable al caso de referencia.

Ante esta determinación, la señora Martínez acudió ante este Tribunal. En su escrito, señala que el Tribunal de Apelaciones cometió los siguientes errores, a saber: (1) erró al concluir que le correspondía a la peticionaria presentar prueba durante las vistas en rebeldía para probar su caso; (2) erró al concluir que el Tribunal de Primera Instancia actuó razonablemente al no dictar sentencia parcial en rebeldía; (3) incidió al determinar que no procedía declarar ha lugar la solicitud de sentencia parcial en rebeldía, fundamentado en que a la parte contraria se le había anotado la rebeldía, impidiendo que pudiera presentar prueba para oponerse; (4) erró al determinar que el mecanismo de sentencia sumaria es incompatible con el proceso sumario de la Ley Núm. 2; (5) incidió al confirmar al Tribunal de Primera Instancia en su decisión de denegar la solicitud de sentencia sumaria parcial sin determinar qué hechos pertinentes y materiales no están en controversia, y (6) erró al confirmar al foro de instancia en cuanto a que sólo se celebraría una vista de daños si se determinaba primero que el despido constituía un acto de hostigamiento sexual o discrimen por razón de sexo.

Por su parte, Petco expuso que este Tribunal carece de jurisdicción para atender el recurso de la peticionaria. En la alternativa, se opuso a la expedición del recurso. Fundamenta su reclamo de falta de jurisdicción en que dos días después de que se notificara la denegatoria del Tribunal de Primera Instancia en anotar la rebeldía a los recurridos,[9] se aprobó la Ley Núm. 133-2014, la cual enmendó la Ley Núm. 2, supra. Mediante esta enmienda, se acortó a diez (10) días el término que se tiene para apelar una sentencia ante el Tribunal de Apelaciones en un procedimiento instado al amparo de la Ley Núm. 2. Íd., 32 LPRA sec. 3127. De esta forma, y de acuerdo a lo resuelto posteriormente por este Tribunal en Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723 (2016) (donde se estableció que, en procedimientos instados bajo la Ley Núm. 2, el término para solicitar revisión de una resolución interlocutoria revisable ante el Tribunal de Apelaciones sería diez (10) días), el patrono razona que el recurso de *certiorari* presentado en aquel entonces por la peticionaria ante el foro apelativo intermedio fue tardío.[10] Esto, debido a que se presentó treinta (30)

---

[9]Nótese que esta Resolución, de la cual recurrió la peticionaria ante el Tribunal de Apelaciones, revisión que concluyó con la anotación de la rebeldía a los recurridos, no es la que se busca revisar mediante el recurso de epígrafe.

[10]El patrono argumentó que procedía la aplicación retroactiva de esta norma por ser una de naturaleza procesal.

días después de que se notificara la resolución recurrida en aquel momento. Por lo tanto, adujo que la Sentencia emitida el 31 de octubre de 2014 por el Tribunal de Apelaciones, mediante la cual se les anotó la rebeldía, era nula y, por tanto, el recurso de referencia era improcedente por fundamentarse, precisamente, en la anotación de rebeldía. Posteriormente, el señor Coss presentó un escrito en el cual plantea los mismos argumentos.

El 20 de junio de 2016, la señora Martínez presentó una moción en auxilio de jurisdicción ante este Tribunal. Solicitó que se paralizaran los procesos ante el Tribunal de Primera Instancia en lo que se dilucidaba la controversia ante este Tribunal, en atención a que se habían pautado unas vistas. El 27 de junio de 2016, este Tribunal emitió una resolución proveyendo no ha lugar tanto al auxilio de jurisdicción como al recurso de *certiorari*. Posteriormente, la peticionaria presentó una solicitud de reconsideración, la cual fue declarada no ha lugar. Oportunamente, la peticionaria presentó una segunda moción solicitando reconsideración, la cual declaramos ha lugar y, en consecuencia, expedimos el auto presentado.

Así las cosas, y con el fin de plasmar los fundamentos que sustentan mi disenso, expongo el marco estatutario y jurisprudencial aplicable. Veamos.

## II

### A.

La Ley Núm. 2, supra, tiene como propósito brindar a los empleados un trámite procesal sumario "capaz de lograr la rápida consideración y adjudicación de las querellas que éstos presenten en contra de sus patronos". Patiño Chirino v. Parador Villa Antonio, 196 DPR 439, 446 (2016). Véase, además, Medina Nazario v. McNeil Healthcare LLC, supra, págs. 731-732; Vizcarrondo Morales v. MVM, Inc., 174 DPR 921, 928 (2008). Esta ley busca "'proteger el empleo, desalentando el despido sin justa causa y proveyendo al obrero así despedido los medios económicos para'" subsistir. Medina Nazario v. McNeil Healthcare LLC, supra, pág. 732 (citando a Rivera v. Insular Wire Products Corp., 140 DPR 912, 923 (1996)). Para lograr estos fines, la ley estableció lo siguiente:

> "(1)[T]érminos cortos para la contestación de la querella presentada por el obrero o empleado; (2) criterios para la concesión de una sola prórroga para contestar la querella; . . . (5) criterios para la aplicación de las Reglas de Procedimiento Civil; . . . (8) la facultad del tribunal para dictar sentencia en rebeldía cuando el patrono querellado no cumpla con los términos provistos para contestar la querella, y (9) los mecanismos para la revisión y ejecución de las sentencias y el embargo preventivo". Patiño Chirino v. Parador Villa Antonio, supra, pág. 446(citando a Rivera v. Insular Wire Products Corp., supra, págs. 923-924).

En lo pertinente a la controversia de referencia, si la parte querellada no presenta su contestación

dentro del término concedido para ello en la Ley Núm. 2, "el juez dictará sentencia contra el querellado, a instancias del querellante, concediendo el remedio solicitado". Ley Núm. 2, supra, 32 LPRA sec. 3121. De esta forma, y "como norma general, luego de que se extingue el término para contestar la querella, sin que se haya justificado adecuadamente la incomparecencia, el tribunal está impedido de tomar cualquier otra determinación que no sea anotarle la rebeldía al querellado". Vizcarrondo Morales v. MVM, Inc., supra, pág. 935. Véase, además, Ocasio v. Kelly Servs., 163 DPR 653, 670 (2005); Rivera v. Insular Wire Products Corp., supra, págs. 931-932. "Ahora bien, el hecho de que se haya anotado la rebeldía no es garantía per se de una sentencia a favor del querellante". Vizcarrondo Morales v. MVM, Inc., supra, pág. 937. Ello pues, "en el contexto de la rebeldía procesal, se entienden admitidos únicamente los hechos correctamente alegados y no así las alegaciones meramente conclusorias, ni conclusiones de derecho". León v. Rest. El Tropical, 154 DPR 249, 262 (2001). Véase, además, Vizcarrondo Morales v. MVM, Inc., supra, pág. 937; Continental Ins. Co. v. Isleta Marina, 106 DPR 809, 815 (1978).

De ser necesario, el Tribunal de Primera Instancia "debe[rá] celebrar las vistas evidenciarias que sean necesarias y adecuadas para que el querellante sustente sus alegaciones y pruebe los daños alegados en la

querella". Vizcarrondo Morales v. MVM, Inc., supra, pág. 937. En estas vistas, el foro de instancia "deberá aplicar los mecanismos contemplados en las Reglas de Procedimiento Civil para casos en rebeldía". Íd. (cita omitida). A esos fines, "hemos reconocido que las disposiciones y normas interpretativas de la Regla 45 de Procedimiento Civil serán aplicables en todo aquello en que no estén en conflicto con disposiciones específicas de la Ley Núm. 2 o con el carácter sumario del procedimiento que allí se establece". Rivera v. Insular Wire Products Corp., supra, págs. 930-931 (citas omitidas). Véase, además, Ley Núm. 2, supra, 32 LPRA sec. 3120; Díaz v. Hotel Miramar Corp., 103 DPR 314, 321-322 (1975).

**B.**

La Regla 36 de Procedimiento Civil, supra, rige el mecanismo procesal de la sentencia sumaria. Mediante ella se promueve "la pronta, justa y económica solución de los casos que no presenten controversias genuinas de hechos materiales". Velázquez Ortiz v. Gobierno Municipal de Humacao, res. el 17 de marzo de 2017, 2017 TSPR 39, pág. 6. Véase, también, Luan Invest. Corp. v. Rexach Const. Co., 152 DPR 652, 665 (2000). Al solicitar que se emita una sentencia sumaria, una parte "tiene que establecer su derecho con claridad y demostrar que los hechos materiales se encuentran incontrovertidos". Velázquez Ortiz v. Gobierno Municipal de Humacao, supra,

pág. 6. Por otro lado, la parte que se opone a una solicitud de sentencia sumaria "tiene que contestar de forma específica y detallada para poner al juzgador en posición de concluir que persisten dudas acerca de los hechos esenciales de la causa de acción". Íd., págs. 6-7. Véase, también, Ramos Pérez v. Univisión, 178 DPR 200, 215 (2010).

### C.

Sabido es que la Constitución de Puerto Rico en la Sección 1 del Artículo II prohíbe el discrimen por razón de sexo. Art. II, Sec. 1, Const. ELA, LPRA, Tomo 1. "Así, pues, nuestro ordenamiento legal ha respondido a dicho principio cardinal mediante la promulgación de leyes laborales que proscriben tajantemente toda práctica de discrimen por razón del sexo de una persona". López Fantauzzi v. 100% Nat., 181 DPR 92, 114-115 (2011). Por tanto, la Asamblea Legislativa ha establecido "que el hostigamiento sexual en el empleo es una forma de discrimen por razón de sexo y como tal constituye una práctica ilegal e indeseable que atenta contra el principio constitucional establecido de que la dignidad del ser humano es inviolable". Ley Núm. 17 del 22 de abril de 1988, 29 LPRA sec. 155 (Ley Núm. 17).[11]

---

[11]Nótese "que el hostigamiento sexual constituye una modalidad del discrimen por razón de sexo proscrito por la Ley Núm. 100". Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 DPR 643, 651 (1994). Véase, también, Rodríguez Meléndez v. Sup. Amigo, Inc., 126 DPR 117, 124 (1990).

En la Ley Núm. 17 se ha definido el hostigamiento sexual de la siguiente forma:

> El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual . . . , cuando se da una o más de las siguientes circunstancias:
> (a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.
> (b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.
> (c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo. Íd., sec. 155b.

Conforme a la citada definición, "[h]emos reconocido dos modalidades de hostigamiento sexual: el hostigamiento _quid pro quo_ y el hostigamiento sexual por ambiente hostil". Velázquez Ortiz v. Gobierno Municipal de Humacao, supra, pág. 8. Véase, también, Rodríguez Meléndez v. Sup. Amigo, Inc., 126 DPR 117, 131 (1990).

La primera modalidad "se produce cuando el sometimiento o el rechazo de los avances o requerimientos sexuales se toma como fundamento para afectar beneficios tangibles en el empleo". Rodríguez Meléndez v. Sup. Amigo, Inc., supra, pág. 132. Véase, también, Delgado Zayas v. Hosp. Int. Med. Avanzada, 137 DPR 643, 653 (1994) (donde se indica que "[l]os incisos (a) y (b) de . . . [la definición de hostigamiento sexual contenida en la Ley Núm. 17] se refieren al tipo

de hostigamiento . . . quid pro quo (algo a cambio de algo)".). Para que sea exitosa una causa de acción bajo esta modalidad, el demandante tiene que probar "la solicitud de favores sexuales o el sufrimiento de avances de igual tipo, y que el sometimiento o rechazo a dichos avances o a la referida solicitud haya sido la causa de una decisión adversa en cuanto a una condición o al término de su empleo". Rodríguez Meléndez v. Sup. Amigo, Inc., supra, págs. 132-133.

Por otro lado, la modalidad de hostigamiento sexual por ambiente hostil se produce cuando ocurre "'conducta de naturaleza sexual por parte del hostigador la cual interfiere irrazonablemente con el desempeño del empleado en su trabajo o es lo suficientemente severa y ofensiva como para crearle al empleado que es víctima de la misma, un ambiente de trabajo que resulte intimidante, hostil u ofensivo'". Velázquez Ortiz v. Gobierno Municipal de Humacao, supra, pág. 8 (citando a S.L.G. Afanador v. Roger Electric Co., Inc., 156 DPR 651, 662 (2002)). "El inciso (c) [de la definición de hostigamiento sexual contenida en la Ley Núm. 17] se refiere al hostigamiento sexual que cree un ambiente hostil o intimidante". Delgado Zayas v. Hosp. Int. Med. Avanzada, supra, pág. 653. Para concluir que se ha configurado la modalidad de hostigamiento sexual por ambiente hostil, se tiene que determinar "si la alegada conducta constitutiva de hostigamiento fue lo

suficientemente severa y ofensiva como para alterar las condiciones del empleo y crear un ambiente de trabajo abusivo". Rodríguez Meléndez v. Sup. Amigo, Inc., supra, pág. 132. Ahora bien, bajo esta modalidad es importante analizar en conjunto los actos que "crean el ambiente abusivo y hostil, pues cada acto aislado podría no ser lo suficientemente severo como para dar lugar a una causa de acción". Velázquez Ortiz v. Gobierno Municipal de Humacao, supra, pág. 9. Véase, también, Rodríguez Meléndez v. Sup. Amigo, Inc., supra, pág. 132; Ley Núm. 17, supra, 29 LPRA sec. 155c.

Cabe destacar que en estos casos la Ley Núm. 17 impone responsabilidad civil por una cantidad igual al doble de los daños sufridos. Ley Núm. 17, supra, 29 LPRA sec. 155j. Asimismo, permite que se ordene la reinstalación en el empleo y que se cese y desista de los actos que ocasionaron el hostigamiento. Íd.

### D.

"La Ley Núm. 100 . . . prohíbe de modo general y penaliza el discrimen en el empleo". Santini Rivera v. Serv Air, Inc., 137 DPR 1, 4 (1994) (cita omitida). Véase, también, Ley Núm. 100 del 30 de junio de 1959, 29 LPRA sec. 146 et seq. (Ley Núm. 100). Por tanto, prohíbe, entre otros motivos, el discrimen en el empleo por razón de sexo. Ley Núm. 100, supra, 29 LPRA sec. 146. Posteriormente, nuestra Asamblea Legislativa aprobó la Ley Núm. 69 del 6 de julio de 1985, 29 LPRA sec. 1321

*et seq.* (Ley Núm. 69). Mediante ésta, se "declar[ó] el discrimen por razón de sexo una práctica ilegal de empleo". Pérez v. Mun. de Guaynabo, 155 DPR 83, 88 (2001). De esta forma se amplió la protección a la fuerza laboral, en lo que respecta al discrimen por razón de sexo, disuadiendo aún más este tipo de discrimen. Véase García Pagán v. Shiley Caribbean, etc., 122 DPR 193, 199 (1988). Tanto la Ley Núm. 100 como la Ley Núm. 69 imponen responsabilidad civil por una cantidad igual al doble de los daños ocasionados. Ley Núm. 100, supra, 29 LPRA sec. 146; Ley Núm. 69, supra, 29 LPRA sec. 1341. Asimismo, permiten que se ordene la reinstalación en el empleo y que se cese y desista de los actos que ocasionaron el discrimen. Ley Núm. 100, supra, 29 LPRA sec. 146; Ley Núm. 69, supra, 29 LPRA sec. 1341.

**III**

**A.**

En virtud de la normativa que antecede, paso a resolver la controversia que nos ocupa y los fundamentos por los cuales disiento.

Primeramente, debo atender el planteamiento jurisdiccional levantado por los recurridos. Éstos plantean que, debido a la enmienda efectuada en la Ley Núm. 2, supra, mediante la aprobación de la Ley Núm. 133-2014, junto con lo resuelto en Medina Nazario v. McNeil Healthcare LLC, supra, el recurso de *certiorari*

presentado previamente por la peticionaria para cuestionar la denegatoria del Tribunal de Primera Instancia en anotarles la rebeldía fue tardío. De esta forma, aducen que el Tribunal de Apelaciones carecía de jurisdicción en aquel entonces para atender el recurso y que, en consecuencia, la sentencia mediante la cual se les anotó la rebeldía es nula. Por lo tanto, arguyen que no procedía que posteriormente se revisara la denegatoria del Tribunal de Primera Instancia en dictar sentencia sumaria parcial en rebeldía, decisión que se busca revisar mediante el recurso de epígrafe, pues este remedio no estaría disponible al no habérseles anotado válidamente la rebeldía. A los recurridos no les asiste la razón.

Si bien es cierto que la Ley Núm. 133-2014 entró en vigor días después de que el Tribunal de Primera Instancia notificara la resolución mediante la cual se denegó la anotación de rebeldía, ésta enmienda no disponía nada en cuanto al término con que se contaba para revisar una resolución interlocutoria revisable en un proceso instado al amparo de la Ley Núm. 2, supra. Mediante esta enmienda sólo se redujo a diez (10) días el término para apelar una sentencia emitida bajo este procedimiento sumario. No fue hasta que este Tribunal emitió la Opinión en el caso de Medina Nazario v. McNeil Healthcare LLC, supra, que se extendió la referida enmienda al término que se tiene para revisar dictámenes

interlocutorios. Al emitirse esa Opinión, el término con que contaba la peticionaria para solicitar revisión había transcurrido. De esta forma, no procede que se aplique retroactivamente lo establecido en Medina Nazario v. McNeil Healthcare LLC, supra, a un término que ya había transcurrido al momento de emitirse la Opinión. En consecuencia, concluyo que fue oportuno el recurso presentado por la señora Martínez para revisar la determinación del Tribunal de Primera Instancia de no anotar la rebeldía a los recurridos, y, por lo tanto, la sentencia emitida por el Tribunal de Apelaciones, mediante la cual se ordenó la anotación de rebeldía, no es nula.

**B.**

Ante el cuadro fáctico expuesto, y luego de examinar el marco jurídico aplicable, razono que algunos de los errores señalados por la señora Martínez fueron cometidos.

En lo que concierne al cuarto error señalado, encuentro que éste no fue cometido. Siendo el proceso de referencia uno instado al amparo de la Ley Núm. 2, supra, concluyo que no era de aplicación la Regla 36 de Procedimiento Civil, supra, a la solicitud de la peticionaria para que se dictara sentencia sumaria parcial en rebeldía. Ante la petición de la señora Martínez, el Tribunal de Primera Instancia debía analizar las alegaciones de la querella para determinar

si procedía dictar una sentencia parcial en rebeldía, aplicando lo establecido en la Ley Núm. 2 y "las disposiciones y normas interpretativas de la Regla 45 de Procedimiento Civil" que fuesen aplicables. Rivera v. Insular Wire Products Corp., supra, pág. 930. En consecuencia, se torna innecesario determinar si el tercer y el quinto error fueron cometidos.

Referente al primer y segundo error, estos sí fueron cometidos. De las alegaciones contenidas en la querella, surge que la señora Martínez fue víctima de hostigamiento sexual por parte del señor Coss. En las alegaciones se detallaron varias instancias en donde el supervisor hostigó sexualmente a la peticionaria, actos ante los cuales ésta última se sintió incómoda y perturbada. No fueron actos aislados, sino que ocurrieron frecuentemente durante el corto tiempo en que la peticionaria laboró para Petco. Asimismo, se señalaron las consecuencias que ésta sufrió al no acceder a los acercamientos de su supervisor. Por lo tanto, no procede que la señora Martínez tenga que presentar evidencia durante una vista ante el foro de instancia para demostrar que fue víctima de hostigamiento sexual y que sufrió discrimen por razón de sexo. Esta determinación del Tribunal de Primera Instancia no fue razonable.

Respecto al sexto error señalado, concluyo que éste también fue cometido. En la Resolución emitida por el

Tribunal de Primera Instancia, se señaló que la peticionaria tenía que probar primeramente que su despido "fue por causa de un discrimen por sexo o por su modalidad de hostigamiento sexual". Resolución, Apéndice del *certiorari*, pág. 510. El foro primario indicó que si la señora Martínez evidenciaba que su despido se debió a una de estas causas, entonces procedería la celebración de una "vista para cuantificar los daños". Íd. Esta determinación fue errada. Bajo la Ley Núm. 17 se prohíbe y penaliza el hostigamiento sexual sin que tenga que ocurrir un despido injustificado. Ley Núm. 17, supra, 29 LPRA sec. 155b. Asimismo, la Ley Núm. 100 y la Ley Núm. 69 imponen a un patrono responsabilidad por discriminar por razón de sexo, sin que tenga que ocurrir un despido injustificado. Ley Núm. 100, supra, 29 LPRA sec. 146; Ley Núm. 69, supra, 29 LPRA sec. 1323. De esta forma, el Tribunal de Primera Instancia no podía condicionar la concesión de daños a que la peticionaria probara que su despido fue consecuencia de discrimen por razón de sexo u hostigamiento sexual. Dicho de otra manera, aunque el despido de la peticionaria fuese justificado, tendría derecho a ser resarcida por haber sido víctima de hostigamiento sexual y de discrimen por razón de sexo, según surge de las alegaciones de la querella.

## IV

Al amparo de los fundamentos enunciados, disiento del curso de acción tomado por este Tribunal. Por el

contrario, hubiera revocado la Resolución emitida por el Tribunal de Primera Instancia, en cuanto a la denegatoria de dictar sentencia parcial en rebeldía. Así, pues, de una vez le hubiera ordenado que dictara sentencia parcial en rebeldía, a base de las alegaciones contenidas en la querella, y procediera a celebrar cuantas vistas sean necesarias para cuantificar los daños sufridos por la señora Martínez. Al no ser el curso de acción tomado, disiento.

Luis F. Estrella Martínez
Juez Asociado